The first case, Washburn v. Morgato, has been submitted on the briefs. Yes. So we're here to argue Washburn v. Fagan. Yes, but there's two matters there, the cost award as well as the case in chief. And so those have been pursued separately. So how are you going to divide it up? Yeah, how are you going to divide your time? We'll divide it. I'm going to talk about the main case, and then I take it the city will argue both cases. In front of the microphone. I'm sorry, both cases, and Mr. Rosenfeld will respond on the fees and the cost, I'm sorry. And we'll do the best we can with respect to the rest. I was about to say that he has written his brief. I'm not sure. What were you saying? You're proposing an opening, an answer, another opening? Is that what I'm hearing? No, I was going to propose the opposite, that they would answer and then open on the costs, and then we would respond as opposed. Whatever you guys want to do is the deciding judgment. I'm not sure which would be the most effective. Is that okay with you? Yes, Your Honor, as long as we can take humanistic rebuttal on the cost. Sure, sure, to the extent it's necessary. Go ahead. Your Honor, we're here because we feel we were denied a fair trial in this case because the court has slashed away so much of the claims that we had presented, and particularly thereby undercut the story and diminished the story that we were trying to present about the deprivation of the plaintiff's rights. In particular, the grant of summary judgment on the arrest left us. You got all the evidence in of the arrest, I'm sure, with regard to the conduct that led up to the arrest. What you didn't get was a jury determination on probable cause. Yes, and what we also didn't get was the opportunity to argue that this whole episode was what it was, a gratuitous assault on the plaintiff rather than a legitimate arrest in which too much force was used, and there's a huge difference there. Right. I understand. Go ahead. And beyond that, we were deprived of the opportunity to present the context in which we said this took place, i.e., the policy of ignoring and turning a blind eye to this kind of conduct on the part of police officers. So that left. Police officers generally or this officer in particular? It's both, Judge. This officer's history and story in this case are a particular example and an egregious example of the policy. But I thought the district court said the history that you wanted to show was the post-Washburn history. You wanted to introduce later conduct by Officer Fagan in order to show his conduct in conformity with regard to how he treated Mr. Washburn, right? Some. There was some prior and some after. Why isn't the district court correct in ruling as a matter of law under Federal Rule of Evidence 404B that you can't introduce that kind of evidence for that purpose? Well, because it was relevant and probative in the context, Judge. It was. He has discretion, obviously, to keep it out in the 404B. But we're saying he abused his discretion as to the 404B. But he was wrong on the law to knock out the policy claim, which was much broader. But I don't understand how the district court erred. You wanted to introduce other bad acts of a similar nature by this defendant officer in order to show that he acted in conformity therewith with regard to Mr. Washburn. That is specifically what Rule 404B excludes. It excludes. No, I don't think that's ---- I mean, 404B is a very slippery concept, Judge. And ---- Well, that part of it's not very slippery. It's pretty clear and unambiguous. I don't see how the district court can err in following the language of the rule. Do you do research before you come to argue about who you're arguing in front of? I don't think we did in this case. Okay. Do you know that you're arguing in front of the judge who's the chairman of the Criminal Rules Committee for the entire United States judiciary? I didn't know that. Well, that's what Judge Talman is. I understand Rule 404B, Judge, and I understand ---- I suspect he does, too. So what part of the prohibition that he just described do you not understand or you disagree with the rule? We disagree with the ruling because the acts were ---- My question was do you disagree with the rule, not the rule. The rule. No, we don't disagree with the rule. We disagree with its application in this case, and we disagree with the notion that this was simply to show conduct in conformity with the other conduct. We say it shows a predilection and a motivation and an intent. How can you show predilection by events that occurred after this arrest? Judge, we had some before. So we're showing a pattern of conduct over a whole period of a year, 13 months, whatever it was, and we're showing indications that came before he was ever even hired. They're all of a piece, and they're more cogent in the policy context than the 404B context. I understand that. What we lost in 404B ruling was the opportunity to confront him with the other things that he'd done. If we had been ---- if it had been ruled that we could only use the 404B stuff from before, all right. The 404B question, the evidence afterward when the companion case, which was exactly the same kind of thing, where it was a gratuitous assault, where they just, you know, took the advantage of the opportunity to pick a weak guy. But, counsel, the rule operates the same way, whether the evidence is before or after. I mean, you have two problems. One is you wanted to use postconduct evidence. That's a separate problem. Now let's just go to the garden variety run-of-the-mill 404B case. You've got a defendant on the witness stand, and you want to show that he's guilty of misconduct on this occasion because he did it on a prior occasion. And why, again, doesn't the rule specifically address that? Well, Judge, the rule does address that. And if you ---- if he decided it that way, we were stuck with that. This is our weakest point, the 404B. Okay. You want to move on to another point? The Monell point, Judge, is the point that's on the same evidence, only there was way more of it. And the fact is that by excluding that from the case, he left us as it even more so as to the excluding the arrest with this tiny, rump circumstance that was ambiguous because the background and the essence of the story or the essence of the coverup was excluded and was certified. So that now the jury hears, okay, here's a guy who got arrested for being drunk in the morning, and that was all okay, but that was all disputed, Judge. The judge, Jenkins, weighed the evidence to decide to throw out the arrest. He says it himself. He says the Court determines that there wasn't ---- that there was the ---- that the arrest was valid. But Judge Jenkins cited to non-contested issues of fact, did he not, in his ruling? No, Judge, those were heavily contested, whether he stepped in front of a car or not or blocked the car. But you didn't ---- I mean, even the companions of Mr. Washburn testified that he was walking against the light and that he was drunk and beating the drum loudly and that he was blocking traffic. I mean, I ---- He testified that he jumped back. Counsel, I read their testimony, and that's what they said. He testified that he jumped back when the light changed. But he also testified that he blocked the car at the intersection. No, I don't think that's true. I mean, I don't think that's true. Well, I'm trying to find out where the contested issues were of material fact. Judge Jenkins used the Atwater case to decide that it would, even though they didn't arrest him for blocking traffic, they could have. All right. That's already a problem, I think. The evidence was not undisputed that he blocked traffic. He said he turned around when the light changed, just like the vehicle code requires him to, and got back into the median. Well, they arrested him for violation of Penal Code Section 647F, drunk in public. And the testimony, as I read it in the record from his companions, was that he was drunk and very loud. He was loud. He was boisterous. He was happy. He was beating on a drum. And they said they arrested him because they jumped on him because he turned his back on them and put his hand in his waistband going for a weapon. I understand. But he was holding a baseball bat. But that gets to the reason for the takedown. I'm still trying to find out where the disputed issues of fact are with regard to his public intoxication. He himself admitted that he'd had three appletinis and half of a large bottle of beer before they arrested him. Two appletinis? The jail booking record shows that they had to detox him before they could release him. No, the judge, the nurse's record said he was perfectly cooperative and he walked all right and everything was fine. And there was no basis to arrest him for drunk in public when he hadn't done anything besides beat on the drum and cross the street and then get caught in the middle when the light changed and he got back in the median and the car went by and there was no problem. And they jumped out of the car and tackled him before they knew whether he was drunk or a skunk. I mean, they had no idea of that. Your excessive force claim went to the jury, right? Yes. Excessive force. Wrongful force. And you lost. We lost. We lost because we had a rump case. We lost very closely. We had a juror come in crying because of the argument they had. We had a case that could have gone the other way. Judge Jenkins himself finally came around. He started to allow some of the force, the other stuff that he'd thrown out. I mean, he said at the beginning in his order, I'll allow the tackling claim because the defendants don't contest it. He threw everything else out. Now, why did he do that? There was contest on all that, all the way across the board, and there was the policy claim to go with it. And this all presented a wholly different picture than what the jury got to hear. Don't you have two distinct theories, though? One is you're challenging the probable cause for the initial arrest, which if it's invalid, everything else falls. But you're also challenging the manner in which the arrest was effected. That's a separately compensable claim, is it not? Yes, under Atwater. And that's the issue that Judge Jenkins found there were contested issues of fact on, and that's what the jury had to resolve. No, I don't think he did. He said because that's a claim that goes to the arrest, an arrest carried out in an extraordinary matter. The jury didn't decide that the manner in which the arrest was conducted did not violate Mr. Washburn's constitutional right? They just decided that no wrongful force was used. Isn't that the same thing? I mean, are we arguing the same thing? No, but the – but except the manner in which the arrest being carried – was carried out being extraordinary and wrongful vitiates the arrest under Atwater. You're down to about six and a half minutes. I'm going to stop, Judge, because we've got a bunch of other stuff to cover. Thank you. Osborne. May it please the Court. My name is Meredith Osborne, representing deputy – I'm a deputy city attorney in the San Francisco City Attorney's Office, representing defendants in Apeliz, Alex Hagen, Walter Contreras, and the city and county of San Francisco. Also at council table with me is Deputy City Attorney Sean Connolly, who tried this case to a jury, and I'm going to reserve approximately five minutes of my time for rebuttal on the costs argument. Okay. Your Honors, this is a case about a routine arrest that occurred at Divisadero on Oak Street after midnight. When the officer saw Mr. Washburn travel across the street – You know, we're familiar with the facts and we've sort of hashed through them. Why don't you start by addressing Mr. Cunningham's contention that there were contested material issues of fact regarding probable cause to arrest. Thank you, Judge Hawkins. First of all, the record is very clear that the facts were undisputed. Plaintiff's counsel's argument notwithstanding, the facts that are undisputed are on the record and are those that plaintiff and his own witnesses testified to. We know from Scott v. Harris, the Supreme Court instructs us that when opposing parties tell two different stories, one of which is blatantly contradicted by the record, such that no reasonable jury could believe it, courts should not adopt that version of facts for the purpose of ruling on summary judgment. So what are these undisputed facts? Well, Washburn's testimony was as follows. Did they, the cars, start to proceed forward when the light changed? Yes. Did you see them do that? Yes. Where were you when they started to proceed forward a few steps from the island? That's at Supplemental Excerpts of Records 0025. It's undisputed that Washburn was in the northbound lane of traffic when the cars moved forward towards him, and that gave the officers probable cause to believe that he was – that he was in violation of obstruction of a public street. What are the other undisputed facts? Well, his own witnesses bolster that. They say he stepped into traffic, the cars came forward when it turned green from them, and he was standing in the way of the cars. And Sebastian Bacharach's testimony, and that's where, tell me if I'm wrong, is where the cab stopped for James? Yes. Stopped in front of James? Yes. That's at Supplemental Excerpts of Records 0040. So I think this shows you that there aren't no genuine issues of disputed facts on summary judgment. Wasn't there an issue of fact, however, as to whether he had gotten back out of the way of that lane before the time for the green light? No, that was not disputed. Washburn testified that he went past the median on the red light, that then he walked back to the median. Suzanne Beatty said she saw the light turn red when Washburn was at the median, and he testified that he moved forward a couple of steps, a few steps into the northbound lane of traffic after the light had turned red. So that's not a disputed issue of fact on the summary judgment record. Now, in certain parts of the reply brief, Allen's quote sections of the trial record. Now, that's not correct for the purposes of reviewing the district court's ruling on summary judgment. So in an effort to create genuine issues of disputed fact, what you can see is that they're citing the trial record testimony where Washburn tries to rehabilitate his story. But what was before the district court was the record, his deposition testimony, and the facts were undisputed in that deposition testimony. Now, even if there's – even looking beyond the – whether or not he, you know, he went across the street against the red light, which, as I say before, is undisputed, it's obviously also undisputed that he was banging on a large drum and singing, screaming, and yelling at the top of his lungs in a, quote, unquote, primal manner. Now, this is a clear case of disturbing the peace. The officer saw him banging on a large drum, using a musical instrument in a way that manner that would vex or annoy. His own friends are walking over a block behind him because he's annoying them. So I don't think that this is even a close case for probable cause. Was that the basis for the arrest? Well, under Devenpeck v. Alford, Judge Hugg, it doesn't matter what the officer's subjective intent was for arresting Washburn. What matters is what the objective facts, whether or not the facts known to the officers gave rise to probable cause for any offense. So the fact that they didn't cite him for disturbing the peace, they instead cited him for drunken disorderly, does not turn this into a Fourth Amendment violation if they had probable cause that he was – that he was in violation of California I just want to briefly address the Monell issue, because I think it's important to remember that under City v. Los Angeles v. Heller, if there is no underlying constitutional violation, plaintiffs can have – or Washburn can have no Monell claim against the City. There's no municipal liability unless there was an underlying constitutional violation. And here, the jury found unanimously that the officers did not violate Washburn's constitutional rights. So that – that argument is just simply moot. Okay. Unless you have any further questions on the merits, I think at this point I'd like to move on to the costs issue. Okay. You asked for cost as prevailing party, and the district courts exercised its discretion and said no. That's correct, Mr. Hopkins. What's wrong? What's wrong with this is that Judge Jenkins did not find that this was an extraordinary case involving issues of extraordinarily – involving extraordinarily important issues. He – he followed the language in Association of Mexican-American Educators. However, he erred in not finding this extraordinary – this being an extraordinary case. If this isn't an extraordinary case, which this isn't, allowing a denial of costs would mean that whenever a public entity is sued for a civil rights violation and the case goes to trial, there's basically a reverse presumption that the City is no longer entitled to cost as a prevailing party. That simply cannot be right. The – the mere disparity of wealth between parties and the possibility of chilling should not be enough to deny costs, because that would simply – that would exist in every single civil rights case against a public entity. The district court couldn't have concluded after hearing all of the evidence that this was a close case, the jury found it one way, another jury might have found it another way. Therefore, I exercise my discretion not to award costs to the prevailing party in this instance. Well, Your Honor, I think the language in – in Association of Mexican-American Educators is not enough that it's simply a close case. It has to be an extraordinary case. Moreover, this wasn't a close case. If it's a close case, any case that goes to trial is a close case. It's very easy to make a prima facie case of an excessive force claim. It's very difficult to get that claim dismissed on summary judgment. Every time the – the city has to go to trial on an excessive force claim, that's not a close case. The jury was unanimous. If it had been close, they would have hung. Okay. I'll reserve the – unless you have further questions. Well, let me talk a little bit more about this just on the indigence issue, too. About? Indigence? Indigence? The jury – the district court also erred because it found that Washburn was not indigent and still denied costs. Even in cases where an individual defendant might show up would cause a hardship to pay even a portion of costs, that's not a basis for denying costs. And there – since there was no finding of indigence here, the factors – that And here, Judge Jenkins weighed that against the city getting costs. Okay. Thank you. You've got some time, plenty of time, for rebuttal on the cost issue. Okay. To the extent counsel chooses to address it. Okay. Thank you. Counsel? Thank you, Your Honors. Ben Rosenfeld for the plaintiff appellant. Your Honors, and I'll do the rebuttal. First, the record – it's simply untrue that the record is undisputed with respect to the issues that gave rise to the arrest. The record is absolutely replete with disputes on all of the relevant issues. And there's not time here, of course, to go through that seriatim. I commend the court to our reply brief, which I wrote and took great pains to show in the record with citations where everything that pertains to that decision is disputed. Do you dispute counsel's argument that you cited to trial testimony in your reply brief in order to bolster your argument? Your Honor, we may have done that. I sat there trying to recall whether I'd done that. What I do remember – And you would agree that that would be improper for us in reviewing Judge Jenkins' partial summary judgment ruling to rely on the subsequent trial testimony? Yes, Your Honor, with the caveat that your review is de novo. And so – Counsel, that's not my question. De novo doesn't mean that we get to rewrite the rules. The question is, what do the rules permit us to do? And am I wrong that we must confine our analysis to the testimony and the evidence that was adduced during discovery and that was before the district court on summary judgment, and we may not consider the subsequent trial testimony in order to create a contested issue of material facts? Your Honor, I think that's completely correct. I agree with Your Honor. And I – and I – in fact, I even said so. The irony here is that they got after us the first time for citing to the record available at the time of summary judgment, and I even said in a footnote in our brief that that was exactly proper. So I have actually agreed with Your Honor in the briefing in this case. So the answer to my question is yes? Is yes. And, Your Honor, I did take pains to show that there are relevant disputes on all of these points within the record that was available at the time of summary judgment. So if we find any citations to the trial transcript, we should ignore them. I think that's fair, Your Honor. Okay. I think the disputes existed at the time which is operative here, and we've shown that. Your Honor, there's also – put simply, there is no statute under which they had probable cause, whether it was a statute they arrested under or one that was invented or submitted to them under the Devenpeck v. Alford rule later. Well, there are issues of men's – How can – how can you say there was a contested issue with regard to a violation of Section 415, for example, based on the testimony of your own client and his friends and the testimony of the officers as to what he was doing in the middle of the intersection? 415 meaning disturbing the peace, Your Honor? Disturbing the peace. Well, for one thing, Your Honor, because it was – it was testified to and established that they didn't see him, he didn't commit this primal scream that one of the witnesses said he committed at the intersection, but up the street on Oak Street. So these – some things were outside of the officer's presence and couldn't form any part of probable cause to begin with. There are disputes in the record about whether he even hit the drum while he was standing there or had only been doing so while he was walking. But more importantly, Your Honor, none of the – I thought he – I thought he admitted on deposition that he banged the drum at least once while he was in the intersection and that he was singing. I think he said that, Your Honor. But more importantly, I was going to say, none of this gives rise to an arrest under 452. This is a crowded commercial district full of clubs, bars, and restaurants on a Saturday night, and all he's doing is – At what time of the morning? Your Honor, it was – Was it just past midnight? It was sometime shortly after midnight. Like 10 minutes past midnight? I believe it was shortly after midnight, Your Honor. That's right. And so should – are we to take judicial notice that it's okay on Saturday night at 10 minutes past midnight to make lots of noise? No, Your Honor. I think there's extensive law that limits the ability to make arrests in those circumstances. Otherwise, we would be conferring that authority on officers willy-nilly. And likewise, there is no statute, even though we affectionately refer to 647F as drunk in public, that's not the law. It's not a crime to be drunk in public, even if you were drunk, which he was not here. We've also adduced extensive evidence showing that. Well, there has to be a component that he's so intoxicated that he's unable to care for himself, right? Or others. Or others. And then the question is, if he's standing in the middle of a lane of traffic under the influence of something, and he's blocking cars and not in a safe place when they first see him, why wouldn't that give rise to probable cause to believe that there may be a 647F? Because he was – because the record shows that he was not doing that. There were disputes, again, on all of those facts. He was not blocking. And, Your Honor, the witnesses answered the questions in their depositions differently depending on how those questions were posed. And counsel has selected out only those answers which are favorable to them. But their own answers created disputes, as did the plaintiff's own testimony, which, of course, is evidentiary in itself. So that's my point. Do you want to address the cost issue? I do, Your Honor. We're hearing for the first time now at oral argument that their appeal on cost somehow hinges on the lack of a finding by Judge Jenkins that this was an extraordinary case. I don't recall that being the pivotal issue in their briefing or any issue. The issue came down to indigence. Here, we have a judge who made a detailed five-page order of his own drafting, I would point out, not a proposed order that he simply signed, which goes through painstakingly and works with every single standard identified as relevant by the Court in the Mexican-American Educators case. And moreover, to the extent that indigence is the pivot issue for them, as they argued, it's all based on this canard that he hadn't considered evidence of the case that Judge Jenkins explicitly did with a sworn declaration about his indigence in front of them. All of these issues that they point to, that there was a settlement at some time, were all addressed ad nauseum. In fact, they even go so far as to say that this Court, in finding that he was indigent, did so before it had an opportunity to consider their opposition paper, but that's simply not true either. The order came down on October 21, 2006. Their opposition was filed on October 13, 2006. They argued all the same things. They argued it in both courts. And it was always rejected that he had access to these settlement funds in any way. I mean, I can – I swore in my own statement that we collected part of that on a contingent fee, and plus two years had elapsed, as Judge Jenkins found, indirectly addressing all of these matters. I would – I think it's academic that the Court exercise proper discretion. I would ask this Court to go a step further in response to counsel's point that there's a problem here that they're suddenly going to be faced, you know, with the inability to deter claims. There exists a great mechanism for that under Rule 11. For the same reason that fees are only shifted in favor of a prevailing civil rights plaintiff because Section 1983 is remedial, I would submit that the same rule and all the same policy considerations which undergird that also apply to the consideration on costs, and that this Court should find that it is disfavored in civil rights cases to award costs against non-prevailing plaintiffs. Rule 11 exists to do that. Thank you. Roberts. Thank you. Rebuttal on costs. Thank you, Your Honors. First of all, I'd just say that to point Your Honor's attention to Section 2 of our opening brief in this case on costs that states this was a routine case and not an extraordinary case, and that completely – so I – obviously, they couldn't have been surprised by this argument here today. Second of all, Judge Jenkins' order did not state that this was an extraordinary case. Rather, Judge Jenkins said simply that there were important civil rights that plaintiffs sought to vindicate. But that's true in every civil rights case. The plaintiff seeks to vindicate important civil rights. That doesn't make it extraordinary. Well, unless it's a frivolous case, in which case there may not be a constitutional right at issue at all. That's true, and I understand the argument about Rule 11. But as I stated before, many, many cases cannot be dismissed at the Rule 11 stage or even on the summary judgment stage because they're simply disputed issues of fact. That is not extraordinary. That's often routine, especially in excessive force cases. And the argument that the same policy considerations apply and so we should somehow read a costs – an award of costs into Section 1988 – well, A, the plaintiff wasn't the prevailing party here, so it wouldn't be entitled to fees. And second, there's obviously no congressional intent to award costs. Congress could have included in Section 1983 and Section 1988 an award of costs, but they didn't. So – or an exemption from an award of costs for prevailing parties, and they did not. The presumption is, the strong presumption is that costs are awarded to the prevailing party. And I think that under these circumstances, given the failure to find that this case was somehow extraordinary or raised extraordinarily important issues, I mean, remember that Association of Mexican American Educators involved a class of individuals, and also that there was a very spirited dissent about the costs issue on that – in that case. And so that was a very, very different case than this case, and I think it shouldn't control the Court's decision here. Roberts. Thank you. Roberts. All right. Thank everyone. Thank all counsel for their arguments. The case just argued will be submitted for decision. The Court will stand to recess for the day. Thank you, Judge Hart. We'll talk to you soon. Thank you.
judges: Hug, Hawkins, Tallman